IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:16-CV-212-JG

| | | |
|---|---|---|
| JEFFERY NEIL FERRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Jeffery Neil Ferris ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 16, 18. Both filed memoranda in support of their respective motions. D.E. 17, 19. With the consent of the parties, the case was reassigned to the undersigned magistrate judge for disposition pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* D.E. 12, 13; 30 Dec. 2016 Text Ord. For the reasons set forth below, plaintiff's motion will be allowed, the Commissioner's motion will be denied, and this case will be remanded for further proceedings.

## BACKGROUND

### I.    CASE HISTORY

Plaintiff filed an application for DIB on 19 November 2014, alleging a disability onset date of 15 April 2012. Transcript of Proceedings ("Tr.") 23. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 23. On 20 January 2016, a

video hearing was held before an administrative law judge ("ALJ"), at which plaintiff (appearing with an attorney) and a vocational expert testified. Tr. 48-102. At the ALJ's direction, plaintiff submitted to her after the hearing two exhibits (Tr. 460-64). Tr. 23. The ALJ issued a decision denying plaintiff's claim on 2 March 2016. Tr. 23-43. Plaintiff timely requested review by the Appeals Council. Tr. 14-19. On 25 May 2016, the Appeals Council denied the request for review. Tr. 1. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 27 July 2016, pursuant to 42 U.S.C. § 405(g). *See* Compl. (D.E. 1).

## II.    STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations'

2

severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1). This regulation is the counterpart for DIB to the above-cited regulation, which relates to Supplemental Security Income ("SSI"). The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

## III. ALJ'S FINDINGS

Plaintiff was 46 years old on the alleged onset date of disability, 15 April 2012, and 49 years old on the date of the hearing, 20 January 2016. *See, e.g.*, Tr. 41 ¶ 6; 51. The ALJ found that plaintiff has at least a high school education. Tr. 41-42 ¶ 6; *see also* Tr. 52 (plaintiff's testimony that he completed two years of college). Adopting the testimony of the vocational expert (Tr. 94), the ALJ also found that plaintiff's past work included employment as a phlebotomist, emergency medical technician, welder, order picker, and service officer. Tr. 41 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had engaged in substantial gainful activity since the alleged onset date of disability on 15 April 2012, namely, from 1 February 2013 through 1 June 2013. Tr. 25 ¶ 2. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations: posttraumatic stress disorder ("PTSD") and depression. Tr. 26 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 29 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform work at all exertional levels subject to non-exertional limitations:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations. The claimant is limited to a low-stress job, defined as having only occasional changes in the work setting. He is able to have occasional interaction with the public.

Tr. 31 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff had the ability to perform his past work as an order picker as actually and generally performed. Tr. 41 ¶ 6. The ALJ accordingly

4

concluded that plaintiff was not disabled from the alleged disability onset date, 15 April 2012, through the date of her decision, 2 March 2016. *See* Tr. 43 ¶ 7.

Alternatively, the ALJ found at step five that there were other jobs in significant numbers in the national economy that plaintiff could perform. Tr. 42 ¶ 6. Again adopting the testimony of the vocational expert (Tr. 94-95), she found plaintiff able to perform jobs in the occupations of merchandise marker, routing clerk, and floor technician. Tr. 42 ¶ 6. The ALJ concluded alternatively that on this ground as well plaintiff was not disabled from the alleged onset date through the date of her decision. Tr. 43 ¶ 7.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. §405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.* at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence,

5

or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded, or the case be remanded for a new hearing on the principal grounds that the ALJ erred by: (1) not finding his back condition, knee condition, vestibular disorder, migraine headaches, chronic obstructive pulmonary disease ("COPD"), and traumatic brain injury ("TBI") to be severe impairments; (2) not properly assessing a disability rating assigned him by the Department of Veterans Affairs ("VA"); and (3) not incorporating the moderate difficulties in concentration, persistence, or pace she found plaintiff to have into her RFC determination in violation of *Mascio*. Because the court finds that plaintiff's contention under *Mascio* and issues relating to it are dispositive of this appeal, the court's analysis will focus on these matters.

6

## DISCUSSION

## I. ALJ'S DETERMINATION ON CONCENTRATION, PERSISTENCE, OR PACE

Concentration, persistence, or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00C3. It is one of four broad functional areas assessed using the special technique for mental impairments under the Regulations. *See* 20 C.F.R. § 404.1520a. *Mascio* instructs that an ALJ must account for a claimant's moderate difficulties in concentration, persistence, or pace in the RFC determination or explain why they do not translate into limitations in the RFC determination. *Mascio*, 780 F.3d at 638. Where sufficient limitations are not included in the RFC determination and no explanation for their absence is given, remand is in order. *Id.*; *see also*, *e.g.*, *Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015 WL 5725903, at *5-7 (W.D.N.C. 20 Sept. 2015). In *Mascio*, the specific issue was whether a limitation in the RFC determination to simple routine repetitive tasks was sufficient to account for moderate limitations in concentration, persistence, or pace, and the court held that it was not. *Mascio*, 780 F.3d at 638.

Here, the ALJ's determination on concentration, persistence, or pace reads:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant alleged he has nightmares, flashbacks, and difficulty concentrating. However, the severity of deficits alleged are not supported by the substantial evidence of record.

Tr. 30 ¶ 4.

The ALJ seemingly attempted to account in her RFC determination for these difficulties by limiting plaintiff to "a low-stress job, defined as having only occasional changes in the work setting," and "occasional interaction with the public." Tr. 31 ¶ 5. These are the only limitations included in the RFC determination.

7

## II. GROUNDS FOR ALJ'S DETERMINATION ON CONCENTRATION, PERSISTENCE, OR PACE

The ALJ gives four principal grounds why plaintiff's difficulties in concentration, persistence, or pace are not more severe than she found. Each ground and the related deficiencies are discussed in turn below.

### A. Plaintiff's Prior Work as a Phlebotomist

The first ground reads:

> Remember, the claimant was working 40 hours per week as a phlebotomist for four months in 2013 under no special work conditions, and this job only ended when his family relocated (Exh. 7E). The vocational expert classified this job as semi-skilled in nature. The claimant's ability to perform a semi-skilled job on a full-time basis under no special work conditions casts some doubt on the alleged difficulties in concentration and memory.

Tr. 30 ¶ 4. The ALJ ultimately determined, though, that plaintiff lacks the RFC to perform work as a phlebotomist by not including it among the past relevant work he can perform. *See* Tr. 41 ¶ 6; *see also* Tr. 94-95 (vocational expert's testimony that a person with plaintiff's RFC could not work as a phlebotomist because it "would be high stress and involve working with the public"). This determination obviously tends to substantiate that plaintiff's mental impairments are sufficiently severe to prevent him from doing this work.

### B. Evaluation by LPA Jamison

Another ground the ALJ cites for her determination on concentration, persistence, or pace is certain findings in the 20 January 2015 psychological examination of plaintiff performed by Disability Determination Services ("DDS")[4] consulting licensed psychological associate Deanna

---

[4] DDS is an organization within the N.C. Department of Health and Human Services that "receive[s] applications from Social Security offices across the state and determine[s] eligibility for Social Security Disability and [SSI] disability payments." N.C. Dep't Health & Human Servs., https://www.ncdhhs.gov/assistance/disability-services/disability-determination-services (last visited 12 Mar. 2018).

8

Jamison, M.A., the report on which was co-signed by DDS licensed psychologist E. J. Burgess,

Psy.D. Tr. 619-23. The ALJ states:

> Similarly, the consultative psychologists [*i.e.*, LPA Jamison and Dr. Burgess] who evaluated the claimant in January 2015 did not diagnose him with any cognitive deficits (Exh. 4F). Although they opined that the claimant may have difficulty sustaining attention to perform simple routine tasks, this was wholly unsupported by the normal mental status exam findings as well as several other facts. For example, the claimant drove himself 18 miles each way to that psychological exam, even though he was accompanied by his wife who could have driven the vehicle. The claimant told the psychologists that he "spends the day helping his son get homework done and helping his father who recently had some hip surgery" (Id). He also reported that his "favorite activity is to spend time in his shop" (Id). The objective findings from the consultative psychological evaluation in January 2015 were within normal limits despite the fact that the claimant admitted he wasn't taking any mental health medication (Id). He was cooperative and had a normal mood and affect, consistent with describing his mood as "generally alright." He had coherent, goal-directed thought processes with no loose associations. He was not distracted and was not paranoid or delusional. The claimant correctly stated the date and current President. He was able to repeat 3 numbers forward and 3 numbers backward. He was able to recall 5 objects immediately. He was able to recite activities he had done the day before, as well as a current news event. The claimant was able to recite his high school and date of birth, had a good fund of information, a good ability to perform math problems, and a good ability to think abstractly (Exh. 4F). In short, the objective findings from the consultative examination support that the claimant would have no more than moderate limits in concentration, persistence or pace.

Tr. 30-31 ¶ 4.

The ALJ's initial finding, that LPA Jamison's examination did not diagnose plaintiff with any cognitive disorders, apparently refers to the negative findings by LPA Jamison in the "Cognition" portion of her report, which covered orientation, immediate retention and recall, recent and remote memory, fund of information, calculations, abstract thinking, and judgment and insight. Tr. 621-22. The ALJ's finding omits reference to LPA Jamison's diagnosis of plaintiff with PTSD. Tr. 622. This omission reflects a pattern throughout the ALJ's decision of improperly cherry picking information adverse to plaintiff's claim. "'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of

9

nondisability while ignoring evidence that points to a disability finding.'" *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *Hobson v. Berryhill*, No. 5:16-CV-489-D, 2017 WL 2571284, at *7 n.6 (E.D.N.C. 22 May 2017), *mem. & recomm. adopted*, 2017 WL 2570664, at *1 (13 June 2017).

The ALJ next notes LPA Jamison's opinion that, in the ALJ's words, plaintiff "may have difficulty sustaining attention to perform simple routine tasks." Tr. 30 ¶ 4. Not noted by the ALJ is that LPA Jamison explicitly attributed such difficulty to symptoms of plaintiff's PTSD: "He may have difficulty sustaining attention to perform simple repetitive tasks *due to PTSD symptoms*." Tr. 623 (emphasis added). Thus, by not mentioning the link to the underlying impairment of PTSD, the ALJ was, again, cherry picking.

The ALJ then states her rejection of this opinion by LPA Jamison. That the ALJ rejects it, and does not simply partially discount it, is clear from her subsequent stand-alone discussion of LPA Jamison's opinions, in which she states that she gives this opinion "no weight." Tr. 37 ¶ 5.[5]

The ALJ's rejection of this opinion is based, first, on the ground that the mental status examination findings by LPA Jamison were normal. Tr. 30 ¶ 4. The mental status examination findings made by LPA Jamison addressed plaintiff's attitude and behavior, speech, emotional state, and thought processes and content. Tr. 621. The ALJ later reviews individually some of these findings as well as findings from the "Cognition" portion of LPA Jamison's evaluation. Tr. 30-31 ¶ 4; *see* Tr. 621-22.

One deficiency in the ALJ's reliance on this evidence to reject LPA Jamison's opinion is that not all of the areas addressed in the examination findings are pertinent to concentration, persistence, or pace.

---

[5] The ALJ's separate discussion of LPA Jamison's opinions mirrors her analysis of LPA Jamison's evaluation in her discussion of plaintiff's difficulties in concentration, persistence, or pace. *Compare* Tr. 37 ¶ 5 *with* Tr. 30-31 ¶ 4.

10

The ALJ's recitation of the findings also reflects cherry picking. The ALJ stated, in part, "He was cooperative and had a normal mood and affect, consistent with [his] describing his mood as 'generally alright.'" Tr. 30 ¶ 4 (quoting Tr. 621). But his was not plaintiff's full characterization of his mood according to LPA Jamison's report. As LPA Jamison stated:

> Mr. Ferris describes his mood as generally alright. *His wife indicates his mood is usually very negative and he is in a bad mood and when asked if this was normal for him, he states "It's been normal for a while." He was prescribed some medications in the past to help with mood problems such as Wellbutrin, Klonopin, citalopram, and Ambien,* but due to numerous side effects with the medicines he quit taking them. His mood and affect were within normal limits during the evaluation. His energy level is reported to be low. He denied any suicidal thoughts.

Tr. 621 (emphasis added). Thus, instead of indicating that his mood was generally good, which the quotation by the ALJ suggests, he ultimately indicated that his mood was generally negative.

In addition, while objective evidence is unquestionably a proper consideration in evaluating medical opinion evidence, *see, e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."), the ALJ's reliance on objective evidence in her assessment of plaintiff's concentration, persistence, or pace is part of a pattern by her throughout her decision of not simply discounting to a limited degree, but rejecting—that is, giving "no weight" or "very little weight" to—medical opinion evidence based on plaintiff's reports of symptoms and instead requiring objective evidence of the severity of impairments. The ALJ's repeated rejection of medical source opinions based on purportedly contrary objective evidence comes despite the implicit determination of the medical sources rendering the opinions that plaintiff's subjective reports are sufficiently reliable to serve as a basis for their opinions. In this sense, the ALJ is arguably substituting her judgment on a medical issue for that of a medical source—that is, playing doctor—which she is not entitled to do. *See Rohan v. Chater*, 98 F.3d

966, 970 (4th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The ALJ does not provide an explanation justifying the degree to which she relies on objective evidence.

As an additional example of this pattern of insisting on objective evidence, the ALJ states in her separate evaluation of LPA Jamison's opinions:

> I assign very little weight to Ms. Jamison and Dr. Burgess' other opinions [besides the opinion on sustaining attention], as they appear to be heavily influenced by the claimant's subjective report of symptoms, since the objective mental status exam findings were generally within normal limits despite the claimant admitting he wasn't taking any mental health medication. Further supporting my conclusion that the psychologists' opinions were based largely on the claimant's subjective symptoms rather than objective findings, their report indicates they only had a scant 2 pages of medical records from 2012 to review.

Tr. 37 ¶ 5.

As the ALJ's discussion of her determination on plaintiff's concentration, persistence, or pace indicates, much of the objective evidence upon which the ALJ places great reliance is examination findings. But intermittent examinations are inherently limited in their ability to assess chronic mental impairments whose manifestation may be episodic and situational, as can be true with PTSD. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("As we have explained before, a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 277 (5th ed. 2013) ("The symptoms of PTSD and the relative predominance of different symptoms may vary over time. . . . Symptom recurrence and intensification may occur in response to reminders of the original trauma, ongoing life stressors, or newly experienced traumatic events."). The ALJ does not explain why she is justified in relying to the extent she does on examination findings as a valid indicator of plaintiff's mental condition outside of the examination room.

12

The "several other facts" the ALJ cites in rejecting LPA Jamison's opinion on plaintiff's ability to sustain attention to perform simple tasks provide scant support to her determination. An 18-mile drive could reasonably be expected to take about half an hour, a far cry from the total eight hours of attention needed during a typical workday or even a two-hour segment of a workday, the typical period between breaks. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at \*7 (2 July 1996) (recognizing a typical workday as lasting eight hours); *Del Vechio v. Colvin*, Civ. Act. No. 1:14CV116, 2015 WL 5023857, at \*5 (W.D.N.C. 25 Aug. 2015) (recognizing that customary breaks are a morning break, a lunch period, and an afternoon break at approximately two–hour intervals). Moreover, as the ALJ noted, his wife was with him. Her presence was tantamount to having a job coach in a work setting. She was available to keep him focused on driving carefully and staying on the proper route. In contrast to disregarding this special condition relating to plaintiff's driving, the ALJ specifically cited the absence of "special work conditions" in giving weight to plaintiff's prior work as a phlebotomist. Tr. 30 ¶ 4.

As to plaintiff's statements to LPA Jamison about helping his son with homework, helping his father, and liking to spend time in the shop, an initial question is why the ALJ credits these statements while rejecting other statements by plaintiff. The same issue was, of course, presented by the ALJ's crediting plaintiff's statement that his mood was "'generally alright.'" Tr. 30 ¶ 4. Plaintiff's statement that he "spent the day helping his son get homework done" appears not be true literally because his son appears to be in school much of the day. *See, e.g.*, Tr. 69 (plaintiff's testimony about shopping with his son after school); 78 (plaintiff's testimony about picking his son up from school). Without knowing more specifically the nature of the assistance plaintiff is providing and over what period of time, the fact of such assistance says little about plaintiff's limitations with respect to concentration, persistence, or pace. The same is true of the help plaintiff

13

states he provides his father. Similarly, the extent to which spending time in his shop sheds light on plaintiff's capacity for concentration, persistence, or pace depends on what he does in the shop and over what period of time. The needed information does not appear to be of record; the ALJ certainly does not discuss it.

The Commissioner attributes great significance to the fact that at the conclusion of her discussion of LPA Jamison's evaluation the ALJ states that the objective findings in it show that plaintiff would have "no more than" moderate limitations in concentration, persistence, or pace. Tr. 31 ¶ 4. The apparent implication is that the Commissioner is not bound to the same standards as if she had found plaintiff actually to have moderate difficulties in concentration, persistence, or pace. But, of course, the ALJ did make the finding that plaintiff has moderate difficulties in concentration, persistence, or pace. Again, she states, "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." Tr. 30 ¶ 4. The fact that the ALJ states that certain evidence, in her judgment, shows no more than moderate limitations in concentration, persistence, or pace does not negate her principal finding on concentration, persistence, or pace or lower the Commissioner's obligations arising from that determination, including specifically the obligation to account for those difficulties in the RFC determination or explain why they are not accounted for.

## C.  Assessments by Non-examining DDS Consulting Psychologists

An additional ground the ALJ cites in support of her finding on plaintiff's concentration, persistence, or pace is several findings by the DDS consultants at the initial and reconsideration levels of review. The initial review was performed by psychologist Eleanor E. Cruise, Ph.D. on 29 January 2015 (Tr. 109-10, 114-16) and the reconsideration review by psychologist Leif Leaf, Ph.D. on 27 May 2015 (Tr. 127-28, 132-34). The ALJ stated:

14

I assign great weight to DDS psychological examiners who concluded that the claimant was not significantly limited in carrying out detailed instructions, though he would be limited to a low stress environment with only occasional changes in the work setting (Exh,. 1A, 3A).

Tr. 31 ¶ 4. Although the ALJ refers to these sources as "examiners," they, of course, conducted their evaluations without examining plaintiff. In contrast, the ALJ rejected the opinions of other sources, in part, because they examined plaintiff only once or, in the case of a treating source, three times. *See* Tr. 36 ¶ 5 ("no weight" given opinions "based on a one-time exam" by Dr. Land); 37 ¶ 5 ("no weight" given opinions of Dr. Hoeper based on a "one-time visit")[6]; 38 ¶ 5 ("no weight" given opinions of Dr. Crowe based on a "one-time exam"); 39 ¶ 5 ("no weight" given 20 Sept. 2015 opinions of Dr. Barrow based, in part, on lack of a "significant treatment relationship with the claimant, having seen him for a total of 3 visits").

This assessment by the ALJ of the DDS evaluations in her discussion of plaintiff's concentration, persistence, or pace parallels her subsequent stand-alone assessment of their evaluations. Tr. 36 ¶ 5. There, the ALJ summarized their opinions and explained her assessment of them as follows:

DDS Psychological examiners concluded the claimant had mild limits in activities of daily living; would be moderately limited interacting the public; and would be limited to a low stress job with only occasional changes in work setting. They also concluded the claimant would not be significantly limited in carrying out detailed instructions, nor in interacting appropriately with coworkers (Exh. 1A, 3A). I give great weight to these opinions, as they are consistent with the overall evidence as well as the objective mental status findings as the consultative psychological examination.

Tr. 36 ¶ 5.

---

[6] In Dr. Hoeper's report on his mental health evaluation of plaintiff on 23 November 2015, he directed as part of his treatment plan that plaintiff was to be seen in ten weeks (and every ten weeks thereafter). Tr. 35 ¶ 5; 189 ¶ 3. The ALJ notes that "[a]s of the date of our hearing on January 20, 2016 the claimant had not returned to Dr. Hoeper for any further visits." Tr. 35 ¶ 5. The point of this finding is unclear since the ten-week period specified by Dr. Hoeper had not expired by the time of the hearing.

15

What is striking about the ALJ's review of the DDS consulting psychologists' opinions is her omission of key opinions by them and thereby her continued cherry picking. They found, for example, that plaintiff "can maintain conc/attn for two hours at a time as required for performance of simple tasks." Tr. 115, 133. Dr. Cruise also found at the initial level that plaintiff "should be capable of srrts [*i.e.*, simple routine repetitive tasks] in [a] relatively stable work role with limited social demands." Tr. 110. In a similar vein, Dr. Leaf stated that plaintiff "is capable of performing simple routine tasks with limited social interaction and minimal changes." Tr. 134. By citing the consultants' opinion that plaintiff was not significantly limited in the ability to carry out detailed instructions, the ALJ gave the impression that they placed no limitations on the complexity of work he could perform. In fact, though, as seen, they specifically tied plaintiff's ability to maintain concentration and attention to his performance of simple tasks and, even then, limited him to maintaining attention and concentration to two hours at a time. Similarly, the consultants tied the limitations of a stable work situation with limited social demands to performance of simple routine tasks.

As indicated, in explaining why she gave great weight to the specified opinions of the DDS consulting psychological reviewers, the ALJ cites, in part, consistency with the overall evidence. This reason is so broad as to be essentially meaningless for purposes of judicial review. The other reason is the objective findings by LPA Jamison, the problems with the ALJ's reliance on which were previously discussed.

## D.    Assessments by VA Sources

The remaining ground the ALJ cites for her determination on concentration, persistence, or pace is two VA reports on plaintiff. The ALJ states:

Furthermore, the VA has assessed the claimant as having a history of only "mild" traumatic brain injury with "mild" neurocognitive disorder (Exh. 11B/16). The VA

16

has observed that the claimant "has had several neuropsychological testing performed indicating no residual cognitive deficits" (Id). This is consistent with the fact that the claimant demonstrated only "mild" impairment of memory, attention and concentration when evaluated on March 11, 2014 (Exh. 2F). The claimant himself admitted to the VA evaluators in March 2014 [*i.e.*, on March 11, 2014] that neuropsychological testing in 2013 revealed "no major problems" (Id).

Tr. 30 ¶ 4.

The first report referenced is dated 7 April 2014 and was prepared by physician Marvin Dees, M.D. at an Army medical center in Georgia. Tr. 200-03. The findings the ALJ cites relate solely to plaintiff's TBI. She omits from one of the findings she quotes the express qualification that it relates to TBI. The sentence reads in full: "Service member has had several neuropsychological testing performed indicating no residual cognitive defect *related to TBI*." Tr. 202 (emphasis added). The ALJ does not mention that this same report found plaintiff to have chronic PTSD and persistent depressive disorder. Tr. 201 ¶ 7. Further, the report identified the PTSD and depressive disorder as not meeting medical retention standards, whereas it found that his TBI did. Tr. 201 ¶ 7; 202 ¶ 9. Thus, the ALJ's assessment of the 7 April 2014 report is characterized by cherry picking.

The same is true of the ALJ's assessment of the other VA reports she cites. As indicated, they concern an examination of plaintiff on 11 March 2014. Tr. 505-490.[7] The examination was performed by Leif C. Crowe, Ph.D., whose signatures on the reports are dated 28 March 2014. *See* Tr. 498, 490. Dr. Crowe examined plaintiff with respect to both his TBI (Tr. 503-498) and PTSD (Tr. 497-90). The ALJ cites to only the report on TBI. Thus, the finding by Dr. Crowe cited by the ALJ regarding "'mild' impairment of memory, attention and concentration" appeared in a portion of the report on TBI entitled "Assessment of cognitive impairment and other residuals

_____

[7] These reports appear in the record in reverse order.

17

*of TBI.*" Tr. 30 ¶ 4; 503 (emphasis added). Dr. Crowe explained this finding by stating that plaintiff did exhibit problems, but that they were likely not due to his TBI:

> On the MoCA [*i.e.*, Montreal Cognitive Assessment], concentration was markedly effortful[,] subtracting serial sevens was accurate, but slow and accompanied by much hemming, hawing, repetition, and self-checking[.] Word production under a time limit was poor, and inconsistent with the claimant's demonstrated verbal abilities. In both cases, anxiety is a more likely explanation than TBI[.] The claimant and his wife both commented on his poor short-term memory, as well as his frequently forgetting to finish tasks and often having to struggle to recall well-rehearsed information. The MoCA revealed that he used an effective mnemonic device for accurate delayed recall of a five-word list. This would not be effective in the day-to-day situations where his reported impairment occurs. The claimant's abstracting ability was poor[,] both similarities responses were concrete, even on probing.

Tr. 503; *see also* Tr. 501 ("The claimant reports marked chronic irritability with anger outbursts, but this is more likely than not primarily attributable to PTSD."). Thus, Dr. Crowe's finding was hardly as benign as the ALJ portrayed it.

Similarly, plaintiff's characterization of the 2013 testing he mentioned to Dr. Crowe—that it "'revealed no major problems'"—clearly related to his TBI. Tr. 30 ¶ 4. The reference is noted in Dr. Crowe's report on plaintiff's TBI. Tr. 499. At the conclusion of this portion of the report, Dr. Crowe explained that "[i]mpairment caused by residuals of the claimant's TBI is, at least as likely as not, actual but comparatively minor in relation to . . . the impairment resulting from his other mental health diagnoses." Tr. 498.

In his report on plaintiff's PTSD—which, again, the ALJ did not address—Dr. Crowe found that plaintiff had "[m]arked alterations in arousal and reactivity associated with the traumatic [military] event(s) . . . as evidenced by," among other things, problems with concentration. Tr. 493-92. Dr. Crowe also found that with respect to all mental diagnoses, plaintiff had "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." Tr. 496 ¶ 4. He went on to note: "It is not

18

possible to differentiate what portion of the indicated level of occupational and social impairment is attributable to each diagnosis because his disorders interact with and aggravate each other. Nevertheless, the claimant's impairment due to his TBI is relatively minor." Tr. 495. In sum, the ALJ's assessment of the VA reports on plaintiff is plagued by cherry picking.[8]

## III. NEED FOR AND SCOPE OF REMAND

Because of the ALJ's cherry picking, excessive reliance on objective evidence (including particularly examination findings), and selective crediting of plaintiff's statements, the court cannot say that her determination on plaintiff's difficulties in concentration, persistence, or pace is supported by substantial evidence or based on proper legal standards. The deficiencies are not harmless. A proper determination could reasonably lead to a different determination. *See*, *e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

The same deficiencies preclude the court from holding that the ALJ's RFC determination is supported by substantial evidence or based on proper legal standards with respect to plaintiff's difficulties in concentration, persistence, or pace. In particular, the ALJ has failed to show that the limitation of plaintiff to occasional changes in the work place and occasional interaction with the public accounted for plaintiff's difficulties in concentration, persistence, or pace. The insufficiency of this aspect the ALJ's analysis is accentuated by the absence of strong legal support for accommodation of moderate difficulties in concentration, persistence, or pace by limitations in the RFC determination to occasional changes in the work place and occasional interaction with the

---

[8]The ALJ presents a subsequent stand-alone assessment of Dr. Crowe's opinions, stating that she assigned them "no weight." Tr. 38 ¶ 5. This assessment repeats much of the information in the assessment of Dr. Crowe's opinions included in the evaluation of plaintiff's concentration, persistence, or pace. Although the ALJ does cite Dr. Crowe's finding that plaintiff's PTSD causes clinically significant distress or impairment in functioning in this assessment, she relies, in part, on findings in Dr. Crowe's report on TBI in rejecting this finding. She also relies on her assessment of LPA Jamison's evaluation, the deficiencies in which were previously discussed.

19

public. *See, e.g., Stith v. Berryhill*, No. 5:16-CV-689-D, 2017 WL 5896901, at *3, 4-5 (E.D.N.C. 13 Nov. 2017) (holding that plaintiff's moderate difficulties in concentration, persistence, or pace were not accounted for by limitation of her in the RFC to "a low-stress job, defined as having only occasional changes in the work setting, and occasional interaction with the public"), *mem. & recomm. adopted*, 2017 WL 5894539, at *1 (28 Nov. 2017); *Masters v. Comm'r Soc. Sec. Admin.*, Civ. No. SAG-15-2453, 2016 WL 3189194, at *1, 3 (D. Md. 7 June 2016) (holding that plaintiff's moderate difficulties in concentration, persistence, or pace were not accounted for by limitation of her in the RFC to "'work limited to simple, routine, repetitive tasks in a low stress job, which is defined as *few if any workplace changes*, and only occasional decision-making; work can be around coworkers throughout the day, but with only occasional interaction with coworkers; and *occasional interaction with the public*'" (emphasis added)). Remand is therefore required under *Mascio*.

Further, because of these deficiencies, the ALJ has failed to "build an accurate and logical bridge" between the evidence regarding plaintiff's difficulties in concentration, persistence, or pace and her determination on plaintiff's RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotation marks omitted). This failing provides an independent ground for remand.

As previously mentioned, the deficiencies in the ALJ's analysis of evidence regarding plaintiff's mental impairments extend beyond the evidence cited by the ALJ in her assessment of plaintiff's concentration, persistence, or pace. Therefore, the court emphasizes that on remand the Commissioner needs to re-evaluate all the evidence of record, not simply that relating to plaintiff's concentration, persistence, or pace.

While the court will not attempt to address all the evidence implicated by the deficiencies in the ALJ's analysis, a prominent example is evidence from plaintiff's primary care provider,

Physicians East. The ALJ described an annual physical of plaintiff on 3 June 2015 by his primary care physician, R. Doug Barrow, M.D. (Tr. 638-43) as "a normal examination" with normal neurological findings and no abnormal psychological findings. Tr. 35 ¶ 5; 39 ¶ 5. Evincing her cherry picking, the ALJ does not mention that plaintiff reported, among other problems, frequent dizziness, forgetfulness, depression, difficulty concentrating, nervousness, and irritability. Tr. 641-42.

Further, Dr. Barrow's impression was that plaintiff has "[e]ssentially stable H&P," presumably signifying history and physical, but "has ongoing chronic problems, a lot of it from his military deployments and injury." Tr. 643. The ALJ gave "great weight" to the opinion that plaintiff has an "[e]ssentially stable H&P" on the grounds that it was supported by the "normal exam findings" on that date and an examination the year before, on 11 June 2014 (Tr. 645-48). Tr. 39 ¶ 5. She gave "no weight" to Dr. Barrow's opinion on plaintiff's having "ongoing chronic problems" on the grounds that this opinion is not consistent with the examination findings. Tr. 39 ¶ 5. Again, the ALJ relies on objective evidence in the form of examination findings to reject, not simply discount, a medical source's opinions.

The purpose of the examination on 11 June 2014 was completion of a form plaintiff needed to be able to serve as a leader on a Boy Scout trip with his son. Tr. 645. Plaintiff testified that there was another adult leader in the group; the number of boys on the outing totaled four (although the ALJ found there were five (*see* Tr. 30 ¶ 4)); and the camping area where the group went was a Scout Reservation where tents were already up and meals were provided by the staff, "[k]ind of like a hotel under a different name." Tr. 85-86. Based on the normal physical findings and plaintiff's "denying any complaints" (Dr. Barrow said of plaintiff, "He denies any complaints today." Tr. 645), the ALJ gave "great weight" to Dr. Barrow's opinion that plaintiff's "chronic

21

problems appear stable." Tr. 38 ¶ 5. On its face, this determination appears to conflict with the ALJ's attribution of "no weight" to Dr. Barrow's opinion at the 3 June 2015 visit that plaintiff has "ongoing chronic problems." Tr. 39 ¶ 5. After all, if plaintiff does not have "ongoing chronic problems," it is not clear how his "chronic problems [can] appear stable." Tr. 38 ¶ 5; 39 ¶ 5.

In addition, notwithstanding plaintiff's statement that he had no complaints "today," he did report problems, namely, ringing in his ears, hearing loss, and trouble sleeping. Tr. 647. The ALJ does not mention these problems, which appear to be set out in the same listing of potential problems that appeared in the 3 June 2015 office visit note.[9] *See* Tr. 640-42. As discussed, the ALJ also did not mention the problems cited in this listing in Dr. Barrow's note on the 3 June 2015 visit. The ALJ's cherry picking continues.

The ALJ also gives "great weight" to opinions expressed in the four-page Boy Scout form for the scouting trip, which was completed by physician's assistant Amanda Murphy, P.A. at Physicians East, also on 11 June 2014. Tr. 460-64. The opinions are that plaintiff's PTSD was controlled with medication, he had no uncontrolled psychotic disorders, and he had normal physical findings. Tr. 38 ¶ 5. She bases her attribution of great weight entirely on statements by plaintiff:

> I give this [collective] opinion great weight, as it is consistent with the fact that the claimant denied any complaints at his visit with [Dr. Barrow] on this date, and specifically reported no difficulty concentrating, no irritability, no mood changes, no depression, no frequent dizziness, and no forgetfulness. In fact, the only restrictions noted on this form at Exh 22E was "self-limiting PRN", which appears to have been written by the claimant on p. 1, since it was not co-signed by Ms. Murray (Id).

Tr. 38 ¶ 5. The ALJ does not explain why she credited plaintiff's statements in this instance, but not in others. The court has already addressed the concerns relating to reliance on plaintiff's report

---

[9] The listing in the 11 June 2014 office visit note (Tr. 647) is shorter than and appears to be an incomplete version of the listing in the 3 June 2015 office visit note (Tr. 640-42).

22

of no complaints at the visit with Dr. Barrow. Further, the ALJ does not squarely address the appropriateness of attributing great weight to opinions in a form with such a limited purpose and the thoroughness of information provided for which by plaintiff could well have been influenced by a sense of obligation to his son. By attributing great weight to the Boy Scout form, the ALJ was equating it in significance to medical reports with broader and arguably more serious purposes. Similar considerations relate to the ALJ's attribution of great weight to the opinions of Dr. Barrow based on his 11 June 2014 examination of plaintiff for purposes of completion of the Boy Scout form.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's motion (D.E. 16) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 18) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. In ordering remand, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case, matters that are for the Commissioner to resolve. The Clerk is DIRECTED to close this case.

This 12th day of March 2018.

James E. Gates
United States Magistrate Judge